HEARD APRIL TERM, 1873.

## GUIGNARD *vs.* KINSLER.

By Act of the Legislature, passed in December, 1865, a charter for a ferry, with right of way thereto over the land of another, was granted to K., for the term of five years, and in September, 1868, the charter was renewed for the term of fourteen years: *Held*, That the renewal of the charter carried with it the right of way for the extended term of fourteen years.

Neither Section 23 of Article I of the Constitution of 1868 nor the Act of September, 1868, to declare the manner by which rights of way may be acquired, apply to a case where the right of way existed at the adoption of the Constitution.

BEFORE CARPENTER, J., AT RICHLAND, FEBRUARY TERM, 1873.

Action by J. S. Guignard and J. G. Guignard, plaintiffs, against William Kinsler, Edward Kinsler and Henry O. Kinsler, defendants, for an injunction to restrain the defendants from using a right of way over the plaintiffs' land.

The facts alleged in the complaint, and admitted by the answer, were as follows:

In December, 1865, J. S. Guignard, father of the plaintiffs, was the owner for life, with remainder to the plaintiffs in fee, of a farm

in Lexington County, west of the Congaree River, and bounded on the east by that river, called Still Hopes. On the 21st day of December, 1865, the Legislature passed an Act, which is recited in the opinion of the Court, by which they granted to the defendants a charter for a ferry over the Congaree River, for a term of five years, with a right of way thereto through the said farm. The ferry was established by the defendants, and they used, during the said period of five years, part of said farm as a landing place and·way to their ferry. The father of the plaintiffs died on the 18th February, 1868, and on the 15th day of September, 1868, the Legislature passed another Act, whereby the defendants' charter was extended for the term of fourteen years. The defendants continued to use the landing place and way over the farm after the said term of five years had expired, and thereupon this action was brought.

The judgment of His Honor the Circuit Judge is as follows:

CARPENTER, J. This cause was submitted on·the complaint and answer, and was argued by counsel for the plaintiffs and defendants, on an ·application for a permanent injunction. About the facts there is no dispute. The plaintiffs are the owners in fee of the farm "Still Hopes," and the pine lands attached thereto, having acquired title thereto as the heirs-at-law of their father, the late James Sanders Guignard, Jr., and the said plaintiffs are now in possession of the said farm and lands, and have been since the death of their father. On the 21st day of December, A. D. 1865, the General Assembly passed an Act entitled·"An Act to establish certain roads, bridges and ferries." By the 7th Section, Acts 1861–1866, p. 353, it was provided, "that a ferry across the Congaree River, at the city of Columbia, is hereby established and vested in William Kinsler, Edward Kinsler and H. O. Kinsler, their heirs and assigns, for the term of five years, with the same rates of toll allowed to James S. Guignard, at his ferry, and they shall be permitted to have the right of way through the land of the said James S. Guignard, on the western bank of the river.". Under this Act, the defendants ran their ferry and passed over the lands of the plaintiffs, and have continued to do so until the present time. By an Act of the General Assembly, approved September 15th, 1868, it was provided "that the charter heretofore granted to William Kinsler, Edward Kinsler and H. O. Kinsler, to estab-

lish a ferry over the Congaree River, near the city of Columbia, be, and the same is hereby, extended for the term of fourteen years from the expiration of their said charter." On the 26th day of September, A. D. 1868, the General Assembly enacted that the road leading from the said ferry, (Kinslers',) on the western side of the Congaree River, to the State Road, be, and the same is hereby declared to be, a public highway. The facts above stated are all that have any bearing upon the case. Whatever may have been the rights of the defendants, under their charter of 1865, I am of the opinion that the Act of the 18th of September, 1868, conferred no authority upon them to use the lands of the plaintiffs for the purpose of their ferry after the expiration of their original charter, nor did the Act of the 26th day of September, 1868, for the reason that the Acts of the General Assembly, so far as they attempt to confer such rights upon the defendants, are in conflict with the Constitution of the State of South Carolina, and are therefore null and void. By the Declaration of Rights, Article 8, private property shall not be taken or applied for public use, or for the use of corporations, or for private use, without the consent of the owner, or a just compensation therefor. This provision is clear, unequivocal, and mandatory. The Legislature have no power to pass any law infringing upon this wise prohibition, and hence the attempt to give to the defendants the use of the plaintiffs' lands for fourteen years is simply void. The defendants have no right to use or occupy the lands in question, and a perpetual injunction must be granted. It is, therefore, ordered and adjudged that the defendants and their agents and servants, be enjoined and restrained from the further use and occupation of the lands of the plaintiffs described in the pleadings, or any part of said lands in connection with their ferry, or in any other manner or for any other purpose whatsoever. Let copies of this opinion be served upon the defendants.

The defendants appealed on the ground, *inter alia*, that the way over plaintiffs' land having been established by the Act of 1865, and being, therefore, an existing public way when the Constitution of 1868 was adopted, neither Section 23 of Art. I of that Constitution nor the Act of September, 1868, to declare the manner by which rights of way shall be acquired, has any application to the case.

*Pope & Haskell,* for appellants:

I. The State has the right to the use of the waters within her limits, and the *sole* right to establish ferries.—*Stark* vs. *Mc Gowan*, 1 N. & McC., 387, 392, 394.

In 1865, by the right of eminent domain, the State had the right to take private property for public uses, and to establish landings and avenues as appurtenant to the ferry.—*Stark* vs. *McGowan*, (supra); *Gourdin* vs. *Davis*, 1 Bail, 471; Evans' Road Law, p. 10, § 8.

II. In 1865, the Legislature could not take private property for the *private* use of another, and the Legislature could establish no other than a public way.

Private ways can be only acquired : 1, by grant; 2, by necessity ; 3, by prescription.—*Vide* Evans' Road Law, 65, 66 and 68; 3 Kent Com., 419; *Turnbull* vs. *Rivers*, 3 McC., 131; *Beekman* vs. *Saratoga Railroad*, 3 Page, 45; *Matter of Albany St.*, 11 Wend., 149; also 5 Page, 137; 19 Wend., 659; 4 Hill, 140.

The Legislature cannot lay out or grant a private way through the land of *another*. A private way *lies in contract.*—Evans' R. Law, 68, § 17; *Lawton* vs. *Rivers*, 2 McC., 445; *Com's* vs. *Singleton*, 2 N. & McC., 526; *Capers* vs. *Wilson*, 3 McC., 170.

The Legislature could, in the very nature of things, grant only a *public* way.

Let us apply several tests :

1. Test. Ways in *gross* and ways *appurtenant*, considered. When private, how *acquired* and *lost*.

The difference, when appurtenant to a ferry, considered and illustrated.—Evans' Road Law, p. 70; Woolrych on Ways, 2 Vol., Law Library.

2. Test. The ferry and avenues were established, not for the *benefit* of the Kinslers, but for the *benefit* of the *public*.

Who had the right to use and travel the road established by the Act of 1865? All citizens. It was thus public.

In the case of *Prince* vs. *Wilbern*, this is one of the tests.— 1 Rich., 58.

3. Test. If, under the Act of 1865, the way had been obstructed, would not an indictment lie? Yes. If so; why? Would it lie for the obstruction of a private way? Surely not; and why ?

The rule can be found in the following authorities: Woolrych on Ways, 2 Vol. Law L., pp. 53 and 54; *Young* vs. *Com. of Roads*, 2 N. & McC., 537; *McKenzie* vs. *Chovin*, 1 McM., 222; *Com's* vs. *Taylor*, 2 Bay., 282, 290.

When, therefore, the Legislature "took" the way through Guignard's land in 1865 :

1. It was as an appurtenance to a ferry.

2. As such, it was taken for the use of the ferry.

3. It then became *ex vi termini* a public way.

4. Test. The ways taken in such cases are declared public, and are expressly recognized by the Act of 1824.— *Vide* 9 Stat., 544 ; Evans' R. Law, p. 43, § 50.

These tests show that the ways were public ; and what was the precise character of these public ways is not important.

1. They might become *highways*, because they lead from a highway to a highway, and to a market town, and are used by the public generally.

2. They might be what are called, in some of the Acts of the Legislature, (singularly,) " private paths," as contradistinguished from " highways," yet still are public roads, and pass under the name of " thoroughfares."— *Vide* Evans' Road Law, 6 and 7.

It is not important which the Legislature created by the Act of 1865.

They are all public ways, and not private ways.

III. Neither the ferry nor the ways ceased at the end of *five* years.

The " *term* " ended, to be sure, but the franchise still continued in the State as sovereign, and could be re-granted to any one else.

Once established as a public way, how could the State lose her right and authority over the same ?

In two ways only : 1. By a discontinuing Act. 2. By non-user for twenty years, (perhaps.)—Evans' R. Law, 44.

Neither has occurred in this case. No discontinuing Act ; no non-user.

In 1865, two rights : 1. The right to " take." 2. The right to " compensate." One as effectual as the other, and either would fix both the rights of the State and the character of the way.

If the owner had been compensated for the way in 1865, where would this case be ?

And if the " taking " was as effectual as the " compensating," is not the principle the same ?

If every new lease of a term is a " re-taking " of the franchise, then every franchise in the State that has been vested in the State

for the last one hundred years, upon a new lease now, will have to make compensation for the right of way.

Why not?

It is not a question of time, it is a question of right—and the time has expired again and again. The right—if it be a right—matures in a day, as well as it does in a hundred years.

IV. But the Legislature of 1868 did not "take" *private property* for *public use* at all.

That Legislature found it already *public* property, to wit, a public way leading to a public ferry, together making the *franchise*.

This was, then, a franchise in the State (before the Constitution of 1868) which nothing could disturb.

But the Constitution of 1868, itself, puts the matter at rest.— *Vide* Art. VI, § 2.

The Legislature of 1868 found these ways already taken and dedicated to the public use, and *accepted* by the public.

What more? This is *Carver's* Case, 5 Strob., 218, citing *The King* vs. *Inh. of Leake.*

V. Then, by the Act of 1868, p. 74, (the new lease,) the Legislature simply extends the *term* of the lease out of the general franchise (already in the State) to *fourteen* years.

There is no new "taking." There is no new franchise created in conflict with the Constitution of 1868.

These terms are granted, because the State cannot undertake to keep the ferry herself.

Occasionally the State has granted a perpetual franchise of a ferry, which, for the want of a better name, is sometimes called the fee, but not very accurately, perhaps.

Where, then, is the ground for a perpetual injunction at all?

VI. But more: Have not the ways, in contemplation of the Legislature, been actually and fully compensated for by the two grants to the two ferries, giving mutual ways, as will appear by the Acts.

Finally: If the lease of fourteen years, in 1868, had been a "taking" of private property for public use, (which it clearly was not,) there was really no trespass, but a case for compensation under the general Act on that subject.— *Vide* Act 1868, 89.

*Tradewell,* contra:

The subject-matter of this action is the use and occupation of lands, about the ownership of the fee in which there is no dispute. The lands are the admitted property of the Guignards, the respondents, and against their consent, since December A. D. 1865, to a certain extent, have been used and appropriated by the Kinslers, the appellants, for the convenience of their ferry, for their own pecuniary benefit, without compensation.

The right of the Kinslers thus to use and appropriate for their own benefit the lands of the Guignards being denied, the question to be discussed is : On what foundation does the right claimed rest ?

It is contended that the right asserted and exercised has been conferred by the public authority in the solemn form of Acts of the General Assembly, and the following Acts are referred to as bearing directly on the question, to wit: The 7th Section of the Act of 1865, entitled " An Act to establish certain roads, bridges and ferries," 13 Stat., 352, 353 ; the Act of the 18th day of September, A. D. 1868, special session, 14 Stat., 74 ; the Act of the 26th day of September, A. D. 1868, special session, 14 Stat., 118 ; the Act of March, A. D. 1869, 14 Stat., 214 ; the Act of the 22d day of September, A. D. 1868, special session, 14 Stat., 89.

The attention of the Court is called to the 23d Section of the Declaration of Rights, part of the Constitution, Article I, which is as follows: "Private property shall not be taken or applied for public use, or for the use of corporations, or for private use, without the consent of the owner or a just compensation being made therefor: *Provided, however,* That laws may be made securing to persons or corporations, and for works of internal improvements, the rights to establish depots, stations, turn outs, &c.; but a just compensation shall, in all cases, be first made to the owner."

See the 19th Section of the 4th Article of the Constitution, which directs the election by the qualified voters of each County of three persons, as a Board of County Commissioners, and defines their jurisdiction; and also the Act of September, 1868, special session, 14 Stat., 128, passed in pursuance of the said 19th Section of the 4th Article of the Constitution.

June 16, 1874. The opinion of the Court was delivered by

WRIGHT, A. J. The great object that should be kept in view in determining a question of legal construction should be to satisfy

the equities of the case and effect substantial justice so far as that can be attained through the rules and principles of law. By an Act of the General Assembly, approved December, 1865, two ferries were established across the Congaree River, one "at the site of the old Columbia Ferry," and "vested in James S. Guignard, his heirs and assigns, for the term of five years." After the rates of toll are fixed by this Act it says: "And the said James Guignard shall be allowed the right of way to his ferry through the lands of the estate of John O. Kinsler, on the eastern bank of the river where the road now passes : *Provided,* That the said James S. Guignard shall be required to keep and use a substantial rope for crossing his flats at the place where his present main rope is now located: *And provided, also,* That only one toll shall be exacted for crossing said ferry and recrossing within twenty-four hours."

Another ferry across the Congaree River was established by the same Act of the General Assembly and "vested in William Kinsler, Edward Kinsler and Henry O. Kinsler, their heirs and assigns, for the term of five years, with the same rates of toll allowed to James S. Guignard at his ferry ; and they shall be permitted to have the right of way to their ferry through the lands of the said James S. Guignard, on the western bank of the river : *Provided, however,* That the said William Kinsler, Edward Kinsler and Henry O. Kinsler shall not be permitted to land their flats within less than one hundred feet of the main rope now used by the said James S. Guignard as at present located : *And provided, further,* That only ne toll shall be exacted for crossing said ferry and recrossing within twenty-four hours."

Here were two ferries, established by the same Act of the General Assembly, one vested in the appellants and the other in the respondents, each, by the Act of the General Assembly, having the right of way over the other's lands. Hence, it might be very properly inferred that there was a mutual understanding between the said parties that such should be the case. It is conceded by the respondents that the General Assembly, in 1865, had the right to take private property for public use. That it had that right is fully recognized by the following cases: *Stark* vs. *McGowan,* 1 N. & McC., p. 387; *Gourdin* vs. *Davis,* 1 Bail., 471. The right of way was established through the land of the respondents, as well as that of the appellants, and that right having been once established by the General Assembly, and acquired, must remain as essential to the

ferries as long as the General Assembly shall continue them or either of them. If the doctrine contended for by respondents should prevail, then, at the expiration of the time for which the ferry was chartered, the right of way must be acquired and recognized every time the ferry shall be rechartered or the charter extended.

By an Act of the General Assembly, approved September 18, 1868, the appellants' charter was extended for the term of fourteen years from the expiration of the first charter. The appellants having enjoyed the right of way from December, 1865, having acquired that right previous to the adoption of the Constitution of 1868, neither the Constitution of 1868 nor the Act of the General Assembly of September, 1868, entitled "an Act to declare the manner by which the lands, or the right of way over the lands, of persons or corporations may be taken for the construction and use of railways and other works of internal improvements," can be applied to this case, as Section 23 of Article I of the Constitution of 1868, and the Act of Assembly made in pursuance of said Section, only apply to persons or corporations desiring the right of way where it has not already been obtained and such person or corporation not in possession.

The injunction must be dissolved and the judgment of the Court below reversed.

*Moses,* C. J., and *Willard,* A. J., concurred.